## A06A1463. LOVE v. STATE OF GEORGIA.
(637 SE2d 81)

PHIPPS, Judge.

After a bench trial, Evelyn Love was ordered to forfeit her 1993 Honda to the state, which had shown that her husband had sold marijuana to undercover officers from the car. On appeal, Love argues that the trial court showed impermissible bias in favor of the state, that it imposed a higher burden of proof on her than the law of civil forfeiture requires, and that the evidence was sufficient to show that she was an innocent owner. We find that Love carried her burden of showing that she could not reasonably have known of her husband's use of her car for his illegal activity, and we therefore reverse.

The record shows that Love and her husband Randy had been married for about a year when he was arrested in 2004 for selling marijuana to undercover officers from Love's 1993 Honda automobile. Love had received the car in a 1997 divorce settlement from her previous marriage. In that same year, Randy Love had been arrested on one occasion for marijuana possession and convicted on another for possession with intent to distribute. At the time of his 2004 arrest, Randy Love told the police that he "sold drugs for a living." At the hearing on the state's action in rem against the car, Love testified that although she had known Randy since 1992, she was "[not] in the picture" in 1997, that she and Randy did not share money, and that he did not contribute to payment on the household's bills. Love also testified that she often got to her job, which she had held since 1993, by means of other relatives' cars; that Randy was a student and had told her that he worked at a car dealership; that she had no knowledge that he was involved in any kind of drug activity; that she had not seen any sign of drugs, extra cash, or excessive spending; and that she was at work on the night he was arrested.

On cross-examination, the arresting officer conceded that other than Love's husband's statement that he "sold drugs for a living," he

had no factual basis for his assertion that Love herself knew or should have known that her husband was selling drugs from her car. The officer also admitted that he had never seen Love and her husband in or around the car at the same time during the course of his investigation; in fact, he had never seen them together at all.

1. The crux of this appeal is Love's contention that she has proven by a preponderance of the evidence that she is an innocent owner. We agree.

"In a condemnation action, once the State has presented a prima facie case for forfeiture, the claimant has the burden of establishing by a preponderance of the evidence that [she] is an innocent owner."[1] As Love concedes, the state's evidence showed that the Honda was used to transport contraband, and thus established a prima facie case for forfeiture. The burden was then on Love to establish her entitlement to a statutory exception under OCGA § 16-13-49 (e).

> The relevant provisions of that statute provide that a property interest will not be subject to forfeiture if the owner or interest holder establishes by a preponderance of the evidence that it is "not legally accountable for the conduct giving rise to its forfeiture, did not consent to it, and did not know and could not reasonably have known of the conduct or that it was likely to occur."[2]

"On appeal, the trial court's findings of fact will not be reversed unless clearly erroneous, and due regard must be given to the trial court's opportunity to judge the credibility of the witnesses who appeared before it."[3]

Immediately before issuing its ruling, the trial court stated that it did not believe Love's testimony that she did not know about her husband's 1997 drug convictions. Even assuming, as we must, that the trial court was correct in disbelieving this testimony, Love's knowledge of her husband's prior convictions cannot as a matter of law be held to put her on notice that he would commit any future crime, let alone the specific one of selling drugs out of her car. To hold that Love was put on such notice by her husband's previous illegal activity would be to make just the kind of impermissible inference recently struck down by the Supreme Court of Georgia when it held that a lienholder's knowledge of a car owner's involvement in the drug trade did not mean that it should have known that the owner would

---

[1] *Gen. Motors Acceptance Corp. v. State of Ga.*, 279 Ga. 328, 330 (613 SE2d 641) (2005) (citation and punctuation omitted), citing OCGA § 16-13-49 (o) (5) and (p).

[2] Id., quoting OCGA § 16-13-49 (e) (1) (A).

[3] *Mitchell v. State of Ga.*, 236 Ga. App. 335, 337 (2) (511 SE2d 880) (1999).

use the *particular* car on which it held the lien for that illegal purpose.[4] Nor do any of the cases cited by the dissent contradict our result here, since each of those claimants knew that the same relative whose use of the vehicle gave rise to the forfeiture had previously sold drugs from a vehicle owned by that claimant.[5]

The trial court's disbelief of one portion of Love's testimony does not negate every other part of that testimony tending to establish her lack of actual or constructive knowledge.[6] To hold that Love "acquired knowledge that [her husband] would use the vehicle in a manner giving rise to its forfeiture" would misconstrue the statute and undermine the rights of innocent spouses.[7] We cannot interpret OCGA § 16-13-49 (e) in this way when the "forfeiture of property is disfavored," when one of the statute's express purposes is "the protection of the property interests of innocent owners," and when the statutory scheme of which it is a part must be "strictly construed and limited."[8]

We therefore conclude that the trial court clearly erred when it held that Love had not carried her burden of proof under OCGA § 16-13-49 (e) (1) (A) and awarded her car to the state.

2. In light of our holding in Division 1, we need not reach Love's remaining enumerations.

*Judgment reversed. Ruffin, C. J., and Johnson, P. J., concur. Barnes and Bernes, JJ., concur in the judgment only. Andrews, P. J., and Smith, P. J., dissent.*

SMITH, Presiding Judge, dissenting.

I respectfully dissent. The Georgia Supreme Court's decision in *Gen. Motors Acceptance Corp. v. State of Ga.*, 279 Ga. 328 (613 SE2d 641) (2005), of which the trial court was well aware, cannot be extended to apply to the substantially different facts of this case.

OCGA § 16-13-49 (e) (1) (A) provides:

---

[4] *Gen. Motors Acceptance Corp.*, supra, 279 Ga. at 331.

[5] See *Little v. State of Ga.*, 279 Ga. App. 329 (630 SE2d 903) (2006) (claimant knew that his son had also been using the family truck when he was arrested two years before for possession of marijuana with intent to distribute); *State of Ga. v. Tucker*, 242 Ga. App. 3, 9-10 (3) (528 SE2d 523) (2000) (claimant who managed car dealership knew of previous forfeiture action arising from his son's use of a dealership car to transport drugs); *James v. State of Ga.*, 240 Ga. App. 288, 289 (523 SE2d 354) (1999) (police officer had warned claimant that her son was selling drugs out of her car).

[6] See *Tate v. State*, 264 Ga. 53, 55 (2) (440 SE2d 646) (1994) (appellate court must pay close attention to the "actual and complete findings of fact by the trial court judge," and especially to the distinction between findings of fact and conclusions of law). We also note that the case on which the dissent relies most cites *Tate* but ignores this mandate. See *Little*, supra, 279 Ga. App. at 330-331.

[7] *Gen Motors Acceptance Corp.*, supra, 279 Ga. at 331 (citations omitted).

[8] Id. (citations and punctuation omitted).

> A property interest shall not be subject to forfeiture under this Code section if the owner of such interest or interest holder establishes that the owner or interest holder . . . [i]s not legally accountable for the conduct giving rise to its forfeiture, did not consent to it, and did not know and could not reasonably have known of the conduct or that it was likely to occur.

The conclusion that Evelyn Love failed to meet her burden of demonstrating innocent ownership of the property is not clearly erroneous, and we therefore should affirm the judgment of the trial court.

Most importantly, *General Motors* involved a third-party lienholder, not the owner of the vehicle. This principle formed the basis for Judge Barnes's dissent when the case was before this court. *Gen. Motors Acceptance Corp. v. State of Ga.*, 268 Ga. App. 473, 478 (602 SE2d 235) (2004). In its decision, the Supreme Court noted specifically that "[l]ienholders have only contractual rights, strictly governed by statute, to exercise remedies upon default, and are subject to legal challenge in the form of wrongful repossession or foreclosure. [Cits.]" 279 Ga. at 331. The court also was careful to distinguish cases involving "family member owners who had prior firsthand knowledge that the forfeited vehicles were involved in illegal drug activity." Id. at 331-332. The decisions cited by the Supreme Court are *State of Ga. v. Tucker*, 242 Ga. App. 3 (528 SE2d 523) (2000), and *James v. State of Ga.*, 240 Ga. App. 288 (523 SE2d 354) (1999).

In *Tucker*, a car dealership was the record owner of the vehicle and a second car dealership had possession of the vehicle when it was loaned out to Tucker, who was arrested for transporting drugs in the vehicle. Both dealerships were owned or managed by Tucker's father; they frequently passed cars back and forth and loaned them out to Tucker because he was "related to the principals." (Punctuation omitted.) 242 Ga. App. at 8 (3) (a). A year before the case in question, Tucker had been arrested in another loaner vehicle from one of the dealerships, a forfeiture was instituted, and Tucker's father claimed "innocent ownership" of that vehicle as well. We held that this claim, after a previous forfeiture claim "for the same type of offense, committed by the same defendant, with another loaner vehicle, from the same interrelated companies now rings hollow." Id. at 10 (3) (b).

In *James*, a mother's car was forfeited after her son was arrested using the car to transport and sell drugs. A police officer testified that he had warned her that her son was selling drugs out of her car, asked her to smell the odor of marijuana in the car, and showed her drugs he had seized from the car. The mother denied that the officer had told her anything. We held that this conflict in the testimony was a credibility issue for the trial court to determine. 240 Ga. App. at 289.

In *Little v. State of Ga.*, 279 Ga. App. 329 (630 SE2d 903) (2006), the appellants' son used his father's pickup truck and mother's cell phone to make a marijuana sale. He had been arrested two years earlier for possession of marijuana with intent to distribute and had used the truck "during the commission of that crime." Id. at 329. His father was warned at the time of the earlier arrest that his truck would be subject to seizure if the son was caught again. Both parents testified that they did not know their son had returned to selling marijuana, and that they "loosely restricted" his use of the truck although his use of his mother's cell phone was "not really restricted." Id. at 330. The opinion does not indicate that the son was actually living in his parents' house.

"In a condemnation action, once the State has presented a prima facie case for forfeiture, a claimant asserting that he is an innocent owner of the subject property bears the burden of proving such status by a preponderance of the evidence. [Cit.]" *Little*, supra, 279 Ga. App. at 330. Analyzing the facts, we held that the State presented evidence that the parents knew of the son's earlier arrest and that the father knew his truck could be subject to forfeiture, but despite this knowledge allowed their son to use the truck. Most importantly, we concluded that although the parents

> testified that they had no reason to know that their son was using or was likely to use the truck and cellular phone to sell drugs, the trial court was not obligated to believe their testimony even if uncontradicted. [Cit.] Thus, the trial court's ruling that [appellants] failed to prove their innocent-owner status by a preponderance of the evidence was not clearly erroneous. [Cit.] Accordingly, we affirm the trial court's judgment.

Id. at 331.

The facts of this case more closely resemble *Little* than *General Motors*. Most importantly, this is not an absentee, corporate lienholder but a spouse residing in the same household. The vehicle was a family vehicle, awarded to Evelyn Love in an earlier divorce action, but it was the only vehicle they owned, and Evelyn acknowledged that Randy customarily drove it while Evelyn caught rides with relatives or sometimes with Randy. Evelyn disclaimed any knowledge of Randy's finances, his work (other than that she thought he worked for a car dealership part time), but he also went to school and took care of her children. She stated that they had separate finances and bank accounts. She denied that she knew of his involvement in drug activity and denied any knowledge of his two previous arrests in 1997

for marijuana possession and possession with intent to distribute. But she also acknowledged that she had known Randy since approximately 1992.

The investigating officer also testified that Randy told him at his arrest that he sold drugs because he was a college student and had no job. Randy asked the arresting officer if he could call his wife to pick up the car. Police had observed him driving the car on two earlier occasions. The officer testified that based on everything he had learned in investigating the case, there was "a sufficient connection insofar as her knowledge about that vehicle with both of them using it . . . and him stating that he sold drugs for a living."

Along the lines of our reasoning in *Little*, the burden is on Evelyn to show that she "did not know and could not reasonably have known of the conduct or that it was likely to occur." OCGA § 16-13-49 (e) (1) (A). The trial court expressly disbelieved Evelyn's testimony that she did not know about Randy's prior drug convictions and that she did not know what he was doing with her car (in contrast to *General Motors*). While there was no direct testimony that the police saw them together (a fact that the majority emphasized), they had been married for approximately one year, and Evelyn, who had the burden of proof, offered no evidence that they were living apart. In fact, her testimony obviously assumes that they were living together (e.g., she testified that she was at work when Randy was arrested). The trial court concluded that "she lived with the man for a year. I'm not going to sit up here and let you tell me that she didn't know the man pled guilty to marijuana."

As in *Little*, the trial court was not obligated to believe Evelyn's testimony even to the extent it was uncontradicted. 279 Ga. App. at 331. The trial court's ruling was not clearly erroneous, based on the fact that Evelyn and Randy were husband and wife, he had previously been convicted of marijuana offenses, and she allowed him to use her car.

For these reasons, I respectfully dissent.

I am authorized to state that Presiding Judge Andrews joins in this dissent.

DECIDED SEPTEMBER 26, 2006 — 

*Berry, Shelnutt, Day & Hoffman, Peter B. Hoffman*, for appellant.

*J. Gray Conger, District Attorney, Ryan R. Leonard, Douglas L. Breault, Assistant District Attorneys*, for appellee.