A05A0867. STATE OF GEORGIA v. RICHARDSON et al.
(625 SE2d 52)

BERNES, Judge.

The State of Georgia appeals from the trial court's order holding that $10,720 in United States currency was not subject to forfeiture and should be returned to Demond L. Stovall and his mother, Judy Richardson. The State contends that the trial court erred by holding (1) that Stovall and Richardson had standing as claimants to contest the forfeiture and (2) that the search of the residence where the funds were seized was illegal. We agree with the State that Stovall and Richardson lacked standing to contest the forfeiture because they

---

failed to meet their burden of establishing an ownership interest in the currency seized by law enforcement. Accordingly, we reverse.

The evidence reflects that on March 31, 2003, the Magistrate Court of Barrow County issued two arrest warrants for Stovall for the offenses of possession of a controlled substance with intent to distribute and manufacturing marijuana. The arrest warrants were predicated on drug-related evidence seized the previous day during the search of a private residence located in Barrow County. The arrest warrants listed Stovall's home address as 130 Chateau Terrace, Apartment 20, which was located in Athens-Clarke County. Stovall occupied the apartment with at least one other resident, Tyvone Lee Barnes.

Later that day, several law enforcement officers with the Athens-Clarke County Police Department and the Narcotics Division of the Barrow County Sheriff's Office executed the arrest warrants at 130 Chateau Terrace. After obtaining a key from the landlord and knocking on the apartment door, the officers entered the apartment after receiving no response. They did not find Stovall or Barnes inside the apartment. While in the apartment, one of the officers smelled what he believed was marijuana and observed in plain view what appeared to be a marijuana cigarette and rolling papers.

Thereafter, a search warrant was obtained for the apartment from the Magistrate Court of Athens-Clarke County. During the ensuing search, the officers seized, among other things, $140 in United States currency from the master bedroom. The officers also seized from a closet in a separate bedroom $10,580 in United States currency and a duffel bag containing separate smaller bags of a material that later tested positive as marijuana. The $10,580 was found in a safe located in the closet and was divided into various denominations of $10 bills, $20 bills, $50 bills, and $100 bills.

The State subsequently filed a civil in rem complaint for forfeiture under OCGA § 16-13-49 in the Superior Court of Athens-Clarke County. Among other items, the State sought the forfeiture of the $10,720 in currency seized during the search of 130 Chateau Terrace. The State contended that the currency was subject to forfeiture because it was "directly or indirectly used or intended for use . . . to facilitate [the controlled substance] violation[s] or [was] proceeds derived or realized therefrom" (OCGA § 16-13-49 (d) (2)), or because it was found in close proximity to the seized marijuana or other property subject to forfeiture (OCGA § 16-13-49 (d) (6)).

Stovall and his mother Richardson both filed verified answers asserting an ownership interest in the seized cash.[1] They both alleged

---

[1] In its order entered after the condemnation hearing, the trial court noted that no one had

that Richardson had entrusted the seized funds to her son Stovall to spend on the rental, tuition fees, and supplies needed for the college education of her other son, Dominique Stovall. Stovall and Richardson further alleged that the seized cash was fruit of the poisonous tree from a prior allegedly unconstitutional search conducted in Barrow County.

The trial court subsequently conducted a bench trial on the State's forfeiture claims pursuant to OCGA § 16-13-49 (o) (5). After hearing all the evidence, the trial court entered its order holding that Stovall and Richardson had standing to contest the forfeiture because they were bailor and bailee, respectively, of the seized cash. See *Lawrence v. State of Ga.*, 231 Ga. App. 739, 740 (501 SE2d 254) (1998) (proof of bailor-bailee relationship is sufficient to confer standing to contest a forfeiture). The trial court also concluded that the search of 130 Chateau Terrace was constitutionally invalid. Accordingly, the trial court ordered that the seized cash be returned to Stovall and Richardson.

1. The State contends that the trial court erred in finding that Stovall and Richardson had standing as claimants to contest the forfeiture of the $10,720 in United States currency seized from 130 Chateau Terrace. We agree.

> It is clear that to have standing to contest a forfeiture a party must have at least some property interest in the subject matter of the condemnation proceeding. Forfeiture is an in rem proceeding, and the statutory procedure must be strictly construed. The burden is on the claimant to establish her claim; once she does, she is able to contest the forfeiture to the state of the property.

(Citations, punctuation and footnote omitted.) *McFarley v. State of Ga.*, 268 Ga. App. 621, 622 (602 SE2d 341) (2004). See also *Hill v. State of Ga.*, 178 Ga. App. 563, 565 (2) (343 SE2d 776) (1986). "If a person has no interest in the property, she cannot very well be heard to complain of its forfeiture; as a stranger to it, she is a mere member of the public volunteering to challenge the entitlement of the state to the property." (Footnote omitted.) *Belvin v. State of Ga.*, 258 Ga. App. 790, 791 (575 SE2d 707) (2002).

At the forfeiture hearing, Richardson testified that she had withdrawn $15,000 from her 401(k) plan in order to pay for the college

---

filed a claim to recover any of the other property seized by the law enforcement officers. As such, the trial court ruled that all items other than the seized cash were forfeited to the State. Neither Stovall nor Richardson appeal that ruling.

education and related expenses incurred by her younger son, Dominique Walker. According to Richardson, she gave the $15,000 to her older son Stovall with instructions for him to pay Dominque's school-related expenses because she had "a serious gambling habit and . . . did not trust [herself]" with it and because Dominique himself was "careless with money." Richardson testified that she gave the funds to Stovall in the form of a check in the amount of $9,000 and cash in the amount of $6,000 in April 2002, when Stovall was still living at home with her. Richardson further related that Stovall had placed the money she gave him in a small safe which Stovall later took with him when he moved to 130 Chateau Terrace.

Based on this testimony, the trial court was entitled to conclude that Richardson had given $15,000 to Stovall in April 2002 in order for him to spend on the school-related expenses of Dominique. However, there was no testimony or evidence presented at the forfeiture hearing showing that the $10,720 in cash seized by law enforcement approximately 12 months later was a portion of the same monies that Richardson had given to Stovall in the form of a check and cash.

Richardson herself lacked personal knowledge concerning the origin of the specific cash seized at 130 Chateau Terrace. She did not live there and obviously did not have personal possession of the seized cash. Furthermore, Richardson testified that she had not seen the safe where much of the cash was seized for several months and had not looked in the safe at any time during 2003. Therefore, she lacked personal knowledge of how much money had been placed in or taken out of the safe during that time, or even whose money was being kept in the safe at that point. Indeed, Richardson testified that the last time she saw the safe it was not in Stovall's bedroom in the apartment but was in another bedroom that came to be occupied by one of Stovall's roommates. Accordingly, even though Richardson could testify about how she gave money to Stovall for Dominique's school-related expenses, she was not competent to testify about the origin of the specific money located in the apartment at the time of its seizure. The link between the funds had to be proven in some other fashion.

However, Stovall himself did not testify at the forfeiture proceeding.[2] Nor did Stovall or Richardson introduce any other testimonial or

---

[2] In his verified answer, Stovall did allege that the funds seized by law enforcement were a portion of the cash and check previously given to him by his mother for his brother's education. However, Stovall never attempted to introduce his verified answer into evidence at the bench trial in the forfeiture action. Moreover, a pleading that meets all of the requirements for being verified may be treated as the equivalent of an affidavit, see *Foskey v. Smith*, 159 Ga. App. 163, 164 (283 SE2d 33) (1981), but an affidavit constitutes nonprobative hearsay and is inadmissible at a bench trial absent a stipulation between the parties or proof that a hearsay exception applies. See generally *Rokowski v. Gilbert*, 275 Ga. App. 305, 315 (9) (620 SE2d 509) (2005). See also *Hill*, 178 Ga. App. at 565 (2) (previously filed affidavit did not constitute "evidence in the

documentary evidence to establish a connection between the funds. Thus, the link between the $15,000 allegedly given to Stovall by Richardson in April 2002 and the $10,720 seized from Stovall's apartment in late March 2003 was left to mere speculation and conjecture. Under these circumstances, there was no evidence establishing that Richardson had a cognizable property interest in the seized funds as a bailor, and so we conclude that the trial court erred in finding that Richardson had standing as a claimant to contest the seizure of the funds. See *Belvin*, 258 Ga. App. at 791-792 (claimant lacked standing as bailor to contest forfeiture when she failed to prove existence of bailor-bailee relationship).[3]

We likewise conclude that the trial court erred in finding that Stovall had standing as a claimant to contest the seizure of the funds. The only basis upon which Stovall claimed an interest in the seized funds was as a bailee, a claim predicated on the contention that the seized funds were a portion of the check and cash initially provided to him by Richardson for the school-related expenses of Dominique. Because that factual predicate was never proven, Stovall's claim to an interest in the seized funds as a bailee likewise went unproven. Stovall "offered no evidence whatsoever and thus established no right to complain of the forfeiture. The burden was on him to establish his claim." (Citation omitted.) *Hill*, 178 Ga. App. at 565 (2).[4] Therefore, the trial court also erred in finding that Stovall had standing to

---

hearing on the [forfeiture] claim").

[3] Richardson also raises the alternative argument that this case should have been dismissed and the funds returned to her based solely on the verified pleadings because no hearing was set for and occurred within 60 days of when she served her verified answer. "In a civil forfeiture action, when a timely and sufficient answer has been filed, 'a hearing must be held within 60 days after service of the complaint unless continued for good cause.'" *Mitchell v. State of Ga.*, 255 Ga. App. 507, 509 (566 SE2d 24) (2002), quoting OCGA § 16-13-49 (o) (5). "A motion for a continuance of the hearing is addressed to the sound discretion of the trial judge, and in the absence of a clear showing to the contrary, it will be presumed that such discretion was not abused." (Citations and punctuation omitted.) *State of Ga. v. Gonzales*, 213 Ga. App. 661, 662 (445 SE2d 808) (1994). The record reflects that Richardson filed her verified answer on June 5, 2003, and a hearing on all matters in the forfeiture action was originally set for July 31, 2003, within the 60-day period. Prior to the July 31 hearing date, the State moved for a continuance because it had been unable to successfully serve Stovall with a copy of the in rem complaint and summons. The State wanted to have more time to perfect service upon Stovall so that one forfeiture proceeding could be held that resolved the matter as to all potential claimants of the seized property. The trial court granted a continuance and reset the hearing for September 15, 2003, based on its conclusion that the State had shown good cause for a continuance. We find no abuse of discretion by the trial court in granting the continuance. Cf. *Blanks v. State of Ga.*, 240 Ga. App. 175, 177 (1) (522 SE2d 770) (1999) (trial court did not abuse its discretion by granting continuance on ground that witness needed by the State was not available on date of scheduled hearing). Hence, we find Richardson's argument unpersuasive.

[4] We point out that in order to make out its prima facie case for forfeiture, the State was not required to present evidence demonstrating that Stovall owned the monies seized from the safe. It was sufficient for the State to show that the monies were found in close proximity to the seized marijuana or other property subject to forfeiture. See OCGA § 16-13-49 (d) (6).

contest the forfeiture of the seized funds. Cf. *Bohannon v. State*, 251 Ga. App. 771, 772-773 (1) (555 SE2d 112) (2001) (defendant lacked standing to challenge constitutionality of search when only alleged basis for standing was existence of bailor-bailee relationship, and defendant failed to present evidence showing he was bailee).

2. In light of our disposition of Division 1, we need not reach the State's remaining enumeration of error.

*Judgment reversed. Blackburn, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 29, 2005 —
RECONSIDERATION DENIED DECEMBER 12, 2005 — 

*Kenneth W. Mauldin, District Attorney, Anthony Courtney Lee Hing, Assistant District Attorney*, for appellant.
*James W. Smith*, for appellees.